IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| STANLEY J. SEGAL | : |
| DEBTOR | : BANKRUPTCY NO. 10-16822 |
| | : |
| ROBERT H. HOLBER, CHAPTER 7 TRUSTEE | : |
| PLAINTIFF | : |
| VS. | : |
| STANLEY J. SEGAL | : |
| DEFENDANT | : ADVS NO. 14-0504 |

# OPINION
## SUR ORDER OF APRIL 1, 2015

*Introduction*

On April 1, 2015 the Court entered a bench order granting the Plaintiff/Trustee's Motion for Summary Judgment.[1] On April 14, the Defendant/Debtor filed a Notice of Appeal. In accordance with L.B.R. 8001-1(b), this written opinion is filed to supplement the Court's bench ruling on April 1st Order.

*Background*

The Trustee filed this adversary proceeding against the Debtor seeking a declaratory judgment. In specific, the Trustee requested a declaration that (1) certain money which the Debtor may be owed under a contract (the "Consulting Agreement") is

---

[1] The adversary proceeding concerns administration of the estate; it is, therefore, within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A)

property of his estate, and (2) that such money does not constitute otherwise "exempt" wages. The Debtor filed an Answer to the Complaint opposing the relief. The parties conducted discovery and the Trustee filed a Motion for Summary Judgment. In support of his motion, the Trustee offered evidence consisting of documents and deposition testimony. The Debtor filed a reply opposing the motion, but offered no independent evidence of his own. The Debtor relied entirely on purported contradictions in the Trustee's evidence. Those inconsistences, he maintains, create issues of fact which require a trial.

On April 1, 2015 the Court heard oral argument on the summary judgment motion. The Trustee advanced three arguments for why any money due the Debtor was not wages. First, the Consulting Agreement had allegedly been breached and the Debtor filed a civil lawsuit seeking "damages" not "wages." Second, and in the alternative, while the contract is styled as a "consulting" agreement, the payments due under that agreement derive from the sale of the Debtor's largest asset; therefore, the money constituted sales proceeds but, once again, not wages. Third, the Debtor failed to disclose either the money already paid under the Agreement on his Statement of Financial Affairs,[2] or the money yet to be received on Bankruptcy Schedule B. Transcript (Tr.) 2-4.

In response, the Debtor argued that the Consulting Agreement provides for compensation and this could broadly be construed as wages. Tr. 5. Based on the record, however, the Court questioned how the Debtor proposed to establish that the payments under the Consulting Agreement were "wages." Wages, it was noted, require an employer/employee relationship. Tr. 6. Incidences of such a relationship would

---

[2] See Statement of Financial Affairs, Questions 1, 2.

2

typically include the various payroll forms which attend that arrangement; to wit, Forms W-2, W-9, etc. *Id.* A tax return reflecting wage income would likewise be highly probative. To reiterate, the Debtor offered no evidence whatever in response to the Trustee's Motion.[3] The Debtor conceded that earning wages required one to be an employee. Tr. 8. Having no evidence before it that demonstrated this to be the nature of the Debtor's relationship under the Consulting Agreement, the Court found that the monies in question were not, in fact, wages, and that any monies remaining owed under the Consulting Agreement were property of the Debtor's bankruptcy estate. The Court thereupon entered judgment in favor of the Trustee.

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure[4] ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a

---

[3] The Court notes, with concern, that as to employment documents, Debtor's counsel stated that he didn't know if any documents of that sort existed, because he was not familiar with that aspect of the case. Tr 7
[4] Made applicable to adversary proceedings by B.R. 7056.

3

disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-250, 106 S.Ct. at 2511-12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See Halsey v. Pfeiffer,* 750 F.3d 273, 287 (3d Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Post-Petition Wages and*
*Property of the Estate*

Section 541 of the Bankruptcy Code excepts from property of the estate "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Wages earned postpetition are not part of the

individual debtor's estate. *In re Braddy*, 226 B.R. 479, 481 (Bkrtcy.N.D.Fla. 1998); *see also In re Pentell*, 1988 WL 39853, at *2 (Bkrtcy.N.D. Ill. Mar. 8, 1988) ("The purpose of § 541(a)(6) is to allow the debtor to earn wages to meet his personal needs"). The burden of proof as to what is property of the estate generally rests with the creditor; here, the Trustee. *In re Datesman,* 1999 WL 608856, at *2 (Bankr.E.D.Pa., Aug. 9, 1999)

      The Court finds that the Trustee has satisfied his initial burden of *dis*proving the Debtor's claim that any money paid to or due to him under the Consulting Agreement constitutes wages. In that regard the Court found persuasive all three of the arguments made by the Trustee, because each was supported by evidence in the record. Beginning with the argument that the money due the Debtor under the Consulting Agreement constituted damages for a breach of contract, the Trustee refers to the declaration of default which the Debtor made when filing suit in Federal District Court. *See* Motion, Ex. O, Count I. Similarly, the evidence also supports the Trustee's theory that the Debtor deferred receipt of sales proceeds from the sale of his largest asset by characterizing the proceeds as fees to be received under the Consulting Agreement. The Debtor testified in a deposition that he never ended up working for the buyer. *See id.*, Ex. L, Dep. pp. 697-701. Finally, as it is the Debtor's position that the money still due him under the Consulting Agreement was wage income, then the money he already received under it prepetition should have been disclosed as such in his bankruptcy schedules. It was not. His Statement of Financial Affairs failed to disclose $500,000 which he received prepetition purportedly under the agreement. *See* Ex. M, Statement of Financial Affairs, Question ## 1, 2. The Trustee's evidence thus completely refutes the Debtor's claim that money due under the Consulting Agreement is wage income.

5

Perhaps the most direct piece of evidence refuting the claim of wages is found in the Consulting Agreement itself. The Pennsylvania Wage Payment and Collection Law[5] defines wages as "earning of an *employee*." 43 P.S. § 260.2a (emphasis added); *see also* 43 P.S. § 753(x) (defining wages under the unemployment compensation law as "remuneration paid by an employer to an individual with respect to his employment.") The Consulting Agreement, in contrast, states that the Debtor shall be engaged as an "independent contractor." Ex. F, ¶ 1 (emphasis added). The status of an employee versus an independent contractor is, for present purposes, crucial. *See Newton v. M&B Lumber Inc.*, 2005 WL 4001276, 75 Pa. D. & C. 4th 387, 391 ("One who is an "independent contractor" is not an employee within the meaning of the definition of "employee" in the Workers Compensation Act") The difference between a servant or employee and an independent contractor revolves around the party's degree of control over how the work in question is done. *Wilson v. IESI Corp.*, 444 F.Supp.2d 298, 313 (M.D.Pa. 2006) Other factors to be considered are: whether the person has responsibility for results only, the terms of any agreement between the parties, the nature of the work to be done; the skill required for performance, whether one employed is engaged in a distinct occupation or business, which party supplies the tools, whether payment is by time or by the job; whether the work is part of the regular business of the employer, and the right to terminate employment at any time. *Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 243 A.2d 389, 392 (1968).

Against that standard, the Consulting Agreement cannot be read as having created an employment relationship. On the question of control, the term "consulting" itself connotes the providing of expert advice, not the execution of prescribed duties.

---

[5] The Consulting Agreement provides that Pennsylvania law is controlling. Ex. F, ¶ 12.

The Agreement engages the Debtor to provide management services, to review finances, and to aid in the transition of the ownership of the nursing homes which were the subject of an earlier transaction. The Agreement never describes how the Debtor is to go about doing these things. As to compensation, payment is not to occur based on an hourly wage rate or even an annual salary. Payment is to occur in discrete designated amounts over a specified period of time. Considering all of this, the Court found that no employment arrangement created under the Consulting Agreement, and that any payments due under it were not wages.

*Conclusion*

The Court finds there to be no genuine issues of material fact which would require a trial in this matter. To reiterate, the Trustee has clearly established with <u>unrebutted</u> evidence that there is no genuine issue of fact as to the issue of whether any money due the Debtor under the Consulting Agreement constitutes wages. As a matter of law, the Trustee was entitled to the judgment he sought and an appropriate Order was so entered on April 1, 2015.

By the Court:

Stephen Raslavich
United States Bankruptcy Judge

Dated: April 22, 2015